IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                                                                          **Case No.  CR 07-2236 JEC**

**VICENTE A. MONTES,**

    **Defendant.**

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on *Defendant Vicente A. Montes' Motion to Suppress*, filed September 26, 2008 (Doc. 37) ("Motion").  Having reviewed the Motion and the Government's two response briefs, and having conducted an evidentiary hearing on the matter on January 7, 2009, continued on March 11, 2009, the Court finds the motion is not well taken and will be denied.

**I.     BACKGROUND**

Defendant was indicted by a Federal Grand Jury on one count of Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  This charge stems from a traffic stop initiated by Bernalillo County Sheriff's Deputies Elder Guevara and Larry Harlan near the intersection of Old Coors and Bridge in Albuquerque on July 30, 2007 at about 12:51 a.m.

Guevara and Harlan testified they saw Montes' blue Cadillac run a red light, causing them to pull the car over.  When requesting Montes' license, registration, and insurance information, Guevara and Harlan noticed that Montes appeared nervous—his hand was shaking, he was stuttering and sweating profusely, and he resisted eye contact with the officers.  After

returning to Guevara's vehicle to check Montes' license and registration information, both Guevara and Harlan observed Montes' left shoulder "dip," suggesting that Montes may have been hiding or retrieving something under his seat. Concerned for their safety, the deputies returned to Montes' vehicle, and Guevara asked Montes to step out of the car. Guevara testified that Montes then consented to a search of his vehicle.

While standing outside Montes' vehicle, Harlan testified that he observed the grip of a handgun sticking out from underneath the driver's seat. Harlan testified he did not open the driver's side door as part of his search, but rather that Montes left the driver's side door open when he stepped out of the car.

Montes disputes the deputies' account in several respects. First, Montes contends that the traffic stop was unconstitutional because he did not run a red light. He and his girlfriend, Lorissa Quintana, who was Montes' passenger, both claim there was a green arrow. Montes and Quintana also claim that Montes never consented to the search. At the continuation of the suppression hearing, Quintana further testified that she never knew there was a gun in Montes' car and that she would have seen the gun if it had ever been placed on the seat.

The Government argues that BCSO's traffic stop was proper due to the red light violation and, further, that the handgun should not be suppressed because of Montes' consent. Alternatively, the Government argues that the Motion should be denied because the handgun was in plain sight.

II.    DISCUSSION

    A.    **The initial traffic stop was constitutionally sound.**

"When evaluating the reasonableness of the initial stop, '[o]ur sole inquiry is whether this

particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.'" *United States v. Zabalza*, 346 F.3d 1255, 1258 (10th Cir. 2003) (quoting United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995) (en banc)) (alteration in original; internal quotation marks omitted).

Montes' only challenge to the stop consists of his denial that the light was red. *Motion* at 2. Although Quintana's testimony supports Montes, the Court does not find either Montes or Quintana credible on this point. Montes also claims that the BCSO deputies were not in a position to see the green arrow; however, both Guevara and Harlan testified they clearly saw the traffic light and it was red, without any green arrow. Thus, the Court finds that the traffic stop was constitutionally valid.

> **B.    BCSO's further detention of Montes was necessary to secure officer safety in light of Montes' shoulder dip.**

The general rule for traffic stops is that an officer must allow the driver to continue on his way without further questioning so long as the driver has provided a valid license and proof of his right to operate the vehicle. *Zabalza* at 1259. "However, this general rule is subject to a significant exception permitting an officer to engage in further questioning unrelated to the initial stop if he has probable cause, the consent of the suspect, or, at a minimum, a reasonable suspicion of criminal activity." *United States v. Olzbirn*, 189 F.3d 1994, 1199 (10th Cir. 1999).

"During an investigative detention, '[p]olice officers are authorized to take reasonable steps necessary to secure their safety and maintain the status quo.'" *United States v. Sanchez*, 519 F.3d 1208, 1215 (10th Cir. 2008) (quoting *United States v. Garcia*, 459 F.3d 1059, 1063 (10th Cir.2006)). "An officer may conduct a pat-down search 'if he or she harbors an articulable and reasonable suspicion that the person is armed and dangerous.'" *Id.* At 1216 (quoting *Garcia*,

3

459 F.3d at 1064 (quotations omitted)). The required reasonable suspicion "represents a minimum level of objective justification," and is based upon the totality of the circumstances, which includes deference to the officer's reasonable inferences based on his training and experience. *Id.*

In this case, Deputy Guevara testified that he was in the process of checking Montes' driver's license and license plate when he and Deputy Harlan observed Montes' left shoulder dip, as if Montes was placing or retrieving something from under his seat. The officers then immediately approached Montes for a second time out of concern for their safety. Deputy Guevara testified, "I felt that [Montes] might be concealing either a handgun or something, so for my safety I reapproached the vehicle."

Deputy Guevara testified that he then reviewed the circumstances with Montes, noting that Montes seemed very nervous and that it looked like Montes may have been hiding something under the seat. Guevara ultimately asked Montes, "do you mind if I check your vehicle?" Although Montes and Quintana deny that Montes gave consent, Guevara contends he agreed to the search. Guevara then asked Montes to get out of the car and performed a *Terry* pat-down "to make sure he didn't have any weapons on his person."

Based on the totality of these circumstances, the Court finds that Deputy Guevara's concerns for officer safety were reasonable and that the deputies' prolonged detention of Montes was therefore appropriate.

### C. Deputy Harlan found Montes' handgun sticking out from under the driver's seat in plain sight.

There are three conditions which must be met to justify a warrantless seizure based on plain view. *United States v. Janus Indus.*, 48 F.3d 1548, 1554 (10th Cir. 1995). To begin with,

"the seizing agent must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Id.* (internal quotations and citations omitted). Second, the item seized must be in plain sight, with its incriminating character immediately apparent. *Id.* (internal citations and quotation omitted). Third, "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself." *Id.* (internal citations and quotations omitted).

In this case, all three requirements are met. As established in Part A *infra*, the BCSO deputies made a valid stop, and Defendant's denial that he ran a red light is not credible. Second, Montes' handgun was in plain sight in the front seat of his vehicle. Quintana's testimony that she never saw the gun does not provide sufficient grounds to challenge this second factor in that Quintana acknowledged she never looked beneath Montes' seat. Although Montes challenges whether the incriminating character of the gun was immediately apparent at the time of seizure, the Court finds that Montes' apparent efforts to hide the gun—i.e., the shoulder dip—support Deputy Harlan's seizure under the second factor.

The third factor in the plain sight test, requiring that the officer must be lawfully located and have a lawful right of access to the object, is not implicated in this case. *United States v. Naugle*, 997 F.2d 819, 823 (10th Cir. 1993) (holding that the third factor applies "in situations such as when an officer on the street sees an object through the window of a house, or when officers make observations via aerial photography or long-range surveillance" and noting that in such cases, "the officers cannot use the plain view doctrine to justify a warrantless seizure, because to do so would require a warrantless entry upon private premises"). Consequently, the Court finds that the gun beneath the driver's seat of Montes' vehicle was properly seized based

on plain view.

## IV. CONCLUSION

In summary, the Court finds that the Fourth Amendment was not offended by the traffic stop of Defendant Montes' vehicle. The BCSO deputies' further questioning of Defendant Montes and their concerns for officer safety were appropriate given Montes' shoulder dip. Finally, the seizure of the handgun found in plain sight in Montes' vehicle did not transgress the Fourth Amendment.

IT IS THEREFORE ORDERED that Defendant's *Motion to Suppress*, filed September 26, 2008, (Doc. 37) is DENIED.

Dated March 16, 2009.

                                                s/John Edwards Conway

                                                SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

Lynn Wei-Yu Wang, AUSA
Albuquerque, NM

Counsel for Defendant:

Louren M. Oliveros, Esq.
Robert J. Gorence, Esq.
Albuquerque, NM